**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT SIMON,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-970** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **PAM SMITH, *et al.*,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

On May 28, 2021, *pro se* Plaintiff Robert Simon ("Plaintiff"), who is currently incarcerated at the State Correctional Institution in Dallas, Pennsylvania ("SCI Dallas"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against numerous individuals. (Doc. No. 1.) Plaintiff has also filed a motion to appoint counsel (Doc. No. 2) and a motion for leave to proceed *in forma pauperis* (Doc. No. 7). Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of the complaint. For the reasons set forth below, the Court will grant Plaintiff's motion to proceed *in forma pauperis*, partially dismiss the complaint with leave to amend, and deny his motion to appoint counsel without prejudice.

---

[1] *See* The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

# I.     BACKGROUND

## A.     Plaintiff's Complaint

Plaintiff alleges that on October 20, 2020, he was taken to the institutional band room "under the false pretenses that security wanted to speak with him." (Doc. No. 1 ¶ 21.)  He alleges that he was "ambushed by more unidentified staff and forced to 'cuff up." (*Id.*)  Plaintiff was escorted to the Restricted Housing Unit ("RHU"), where "he was placed in solitary confinement without any explanation." (*Id.*)  Plaintiff avers that his cell was "filthy" and that he was denied cleaning supplies in a COVID-19 "contaminated environment." (*Id.* ¶ 22.)

Later that evening, Plaintiff received a misconduct report, in which Defendant Hicks claimed that he saw Plaintiff "light a fire and throw it from the top tier to the bottom tier, resulting in charges of [a]rson, [d]amage of property and [e]ngaging in unauthorized group activity." (*Id.* ¶ 23.)  The next day, Plaintiff received another misconduct, written by Defendant Bower, claiming that Plaintiff had disobeyed a direct order by refusing a cellmate. (*Id.* ¶ 24.)  Plaintiff avers that he was placed on phone, cell cleaning, shower, yard, and movement restrictions by Defendant Bower "without a hearing or any other due process." (*Id.*)

On October 23, 2020, Plaintiff appeared before Defendant McKeown for his disciplinary hearing. (*Id.* ¶ 25.)  Defendant McKeown "dismissed misconduct #D246641 without prejudice (DWOP) and found Plaintiff guilty of misconduct

#D469283." (*Id.*) Plaintiff was sanctioned with thirty (30) days of solitary confinement. (*Id.*) Defendant McKeown claimed that "he did not receive Plaintiff's witness form asking to review camera footage and to call a witness." (*Id.*) Later that day, Plaintiff received a rewritten version of misconduct #D246641. (*Id.* ¶ 27.) On October 27, 2020, Defendant McKeown denied Plaintiff's request to call witnesses and sanctioned him with "180 days consecutive to his prior 30 day sanction, totaling 210 days solitary confinement." (*Id.*) Plaintiff claims that on December 9, 2020, Defendant DeBoer told Plaintiff that he had tested positive for COVID-19, and Plaintiff avers that he "was constantly denied medical treatment." (*Id.* ¶ 28.)

With respect to his conditions of confinement, Plaintiff alleges that he was placed in a cell that was "not cleaned at all." (*Id.* ¶ 33.) He claims that he was denied cleaning supplies and "subjected to hazardous showering areas" that had "blood, feces and bodily discharge on the walls." (*Id.*) Plaintiff avers that officers did not sanitize their handcuffs in between uses, causing potential exposure to COVID-19. (*Id.*) He claims that he was denied laundry services and personal hygiene, such as haircuts and shaves. (*Id.* ¶ 34.) Plaintiff maintains that RHU inmates had to share a telephone that was passed "between inmates that were COVID positive and COVID negative." (*Id.* ¶ 35.) He alleges that he was "subjected to 24 hour in cell confinement with no opportunity for out of cell recreation or any other forms of out

of cell exercise for over a span of 90 days." (*Id.* ¶ 37.) Virtual visits were also discontinued, and Plaintiff complained about the lack of exercise to Defendants Miller, Belles, and "PRC staff members and psychology staff." (*Id.*) Plaintiff also claims that he was "subjected to 24 hour [continuous] lighting coupled with at least 12 hours of loud music blaring through the vent and was forced to eat cold under cooked food." (*Id.* ¶ 38.)

Plaintiff also raises concerns about his medical and mental health treatment. He claims that Defendant Price denied him adequate medical treatment for his hemorrhoids. (*Id.* ¶ 39.) Plaintiff avers that Defendant Prince withheld his prescribed medication, and that even after he was granted partial relief, "medical staff refused to deliver his medication to his cell door, stating that it was placed in his shower bag." (*Id.* ¶ 40.) Plaintiff claims that he was supposed to use the medication several times per day but that he was not allowed a daily shower, so he could "not access his medication for adequate treatment." (*Id.*)

Plaintiff also claims that he was denied adequate treatment for COVID-19 and was not given cough syrup because of the "high demand of cough syrup needed for other inmates." (*Id.* ¶ 42.) He claims that he was given Tylenol "for a severe cough and breathing troubles that ultimately effected his other underlying medical conditions." (*Id.*) Plaintiff avers that Defendant Prince ignored his concerns about having COVID-19 and also denied him medical treatment for a rash or infection "by

not prescribing medication for it as he said he would." (*Id.* ¶ 43.) Plaintiff also claims that medical staff refused to act after he was on an extended hunger strike and reported passing out. (*Id.* ¶ 44.) Plaintiff also claims that Defendants Burla, Martin, and Smith depleted his inmate account, forcing him into indigence, by taking excessive deductions from his account for medical care. (*Id.* ¶ 46.)

Plaintiff further avers that as soon as he learned of the allegedly false misconducts he "became concerned with his metal health" and wrote to Defendant Austin, but his request slip was ignored. (*Id.* ¶ 47.) Plaintiff claims that he wrote to psychologist Ms. McAndrews but that request was also ignored. (*Id.* ¶ 48.) Plaintiff then wrote to Ms. Harrison "complaining about his deteriorating mental state and expressing that his psychotropic medications were no longer working." (*Id.* ¶ 49.) That request slip was ignored, so Plaintiff wrote to Defendant Ashton, but his concerns were again ignored. (*Id.*) Plaintiff avers that he is a "mental patient [active] on the mental health roster and was refused access to psychological services." (*Id.* ¶ 50.)

Plaintiff also claims that Defendants Martin and Smith retaliated against him for his "[numerous] complaints and his peaceful protest by depleting his account with excessive medical co-pay charges." (*Id.* ¶ 51.) He also avers that Defendants Prince and Chackan retaliated against him, as well as Ms. Harrison. (*Id.* ¶¶ 52-53.) Finally, Plaintiff suggests that medical staff retaliated against him by forcing him to

"go to a medical observation cell in the infirmary part of the institution." (*Id.* ¶ 54.) He avers that he was "subjected to foul treatment such as cold air blowing out of a crack in the wall," that the cell lacked basic necessities such as heat and hot water, and that there were dried feces on the lower outside exterior of the toilet bowl. (*Id.*) Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (*Id.* at 9-11.) Plaintiff seeks declaratory and injunctive relief, as well compensatory and punitive damages. (*Id.* at 11.)

**B.     Summary of the Department of Corrections ("DOC")'s Response to COVID-19**

The DOC has provided publicly available information regarding its response to the COVID-19 pandemic. *See COVID-19 and the DOC*, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed June 29, 2021 8:26 a.m.). In-person visitation has been suspended since March 13, 2020. *See id.* "All new inmates are being screened before being admitted into prison," and the DOC is not accepting inmates with flu-like symptoms from county institutions. *See id.* The DOC has provided inmates with disposable masks and "strongly encourage[s] inmates" to use them. *See id.* Moreover, inmates "are being provided materials to clean their cell[s] daily. Materials will be provided to them on a daily basis." *See id.* Institutions are conducting town hall meetings with inmates "to review sanitation guidelines and COVID-19 information for awareness." *See id.* Correctional

Industries has increased the production of anti-bacterial soap, and soap is provided free of charge to all inmates. *See id.*

With respect to staff members, all facilities conduct "enhanced screening for all individuals entering a facility. No one will be permitted to enter a facility who has a fever over 100 degrees or exhibits signs of cold or flu." *See id.* Staff are required to wear masks, and "institutions have provided each staff member with a cloth mask for use." *See id.* Daily updates are provided to all staff members, and PPE has been provided to all staff. *See id.* Employees are advised to stay home if they are sick. *See id.*

Each institution "has plans in place for quarantine if an inmate tests positive." *See id.* All gyms, barber shops, and cosmetology areas have been closed until further notice, as have the general libraries. *See id.* DOC officials have also reduced the inmate population where they can by furloughing paroled individuals from centers to home plans, maximizing parole releases, expediting the release process for anyone with a pending home plan, and reviewing inmates who are beyond their minimum sentences. *See id.*

The DOC has also begun to vaccinate inmates and staff. "Non-medical staff and inmates are in Phase 1B, with vulnerable inmates being prioritized." *See id.* All inmates will be offered the vaccine. *See id.* No one will be required to receive the vaccine, but the DOC will focus on "encouraging vaccination for those inmates in

the long-term care setting who are most vulnerable." *See id.* As of June 29, 2021, there are no active cases of COVID-19 among the inmates at SCI Dallas. *See id.* There has been a total of 1,278 inmate cases at SCI Dallas, with eleven (11) deaths. *See id.* There are two (2) active cases among staff at SCI Dallas, with a total of 275 staff cases. *See id.*

## II.    LEGAL STANDARDS

### A.    Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint. *See* 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding *in forma pauperis* and prisoners challenging prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined

in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted.").

A complaint is frivolous if it lacks an arguable basis either in law or fact. *See Mitchell v. Horn*, 381 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)). When deciding whether a complaint fails to state a claim on which relief may be granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Smithson v. Koons*, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 679; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of *pro se* prisoner litigation, a district court must be mindful that a document filed *pro se* is "to be liberally construed." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards

than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106) (internal quotation marks omitted)).

**B.     Claims Filed Pursuant to 42 U.S.C. § 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

### A.    Plaintiff's Complaint

#### 1.    Claims Against Defendants Harris, Trevethan, and Fagan

As an initial matter, Plaintiff has failed to state a claim for relief against Defendants Harris, Trevethan, and Fagan. Plaintiff named these Defendants in the caption, but there are no averments related to them in the body of the complaint. Thus, Plaintiff's complaint is subject to dismissal without prejudice against these Defendants for that reason alone. *See Robinson v. Wheary*, No. 1:16-cv-2222, 2017 WL 2152365, at *1-2 (M.D. Pa. May 17, 2017) (dismissing the inmate-plaintiff's complaint pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2) where "the caption of the complaint names numerous individual defendants, [but] contains no well-pleaded factual averments relating to these specific defendants in the body of the complaint").

#### 2.    Claims Against Defendants Ransom, Belles, Franklin, Conrad, Everette, and Miskalis

It appears that Plaintiff seeks to proceed against Defendants Ransom, Belles, Franklin, Conrad, Everette, and Miskalis because of their respective supervisory positions at SCI Dallas. For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir.

2009). Therefore, supervisors cannot be liable under § 1983 on the traditional standard of *respondeat superior*. *See Santiago*, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In the instant case, Plaintiff's complaint fails to set forth plausible supervisory liability claims against these Defendants. He has pled no facts suggesting that they participated or had knowledge of and acquiesced in the alleged violation of his rights, and he has not identified any policy that allegedly caused the violation of his rights. *See McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). Accordingly, Plaintiff's claims against Defendants Ransom, Belles, Gavlick, Conrad, Miskalis, Everette, and Franklin, as pled, are subject to dismissal at this time.

### 3.     First Amendment Retaliation Claims

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted that an inmate can satisfy this burden "with

evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In his complaint, Plaintiff alleges that Defendants Martin and Smith retaliated against him for his complaints by "depleting his account with excessive medical co-pay charges." (Doc. No. 1 ¶ 51.) It is well settled that inmates engage in protected activity when they file grievances. *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011). In light of these allegations, the Court concludes that Plaintiff has set forth a plausible First Amendment retaliation claim against Defendants Martin and Smith.

Plaintiff also suggests that Defendant Prince retaliated against him by denying him adequate medical treatment and that Defendant Chackan retaliated against him

by "constantly harassing him and threatening his safety and health." (Doc. No. 1 ¶ 53.) Plaintiff, however, fails to allege that he was engaged in protected activity when Defendants Prince and Chackan allegedly retaliated against him. Moreover, Plaintiff fails to provide facts suggesting how Defendant Chackan harassed and threatened him. Furthermore, Plaintiff claims that "medical staff" retaliated against him by placing him in a medical observation cell, where he was subjected to "foul treatment." (*Id.* ¶ 54.) Plaintiff's collective use of "medical staff," however, is insufficient to plead how the named Defendants retaliated against him in this way. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged). Finally, while Plaintiff suggests that Ms. Harrison retaliated against him by stopping his psychotropic medications, he has not named Harrison as a defendant in the above-captioned action. Thus, while Plaintiff can proceed on his retaliation claim against Defendants Martin and Smith, his other retaliation claims are subject to dismissal at this time.

### 3. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective

component. *See id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Id.*

### a.    COVID-19 Claims

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed.*

*Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

Here, Plaintiff suggests that Defendants Ransom, Belles, Gavlick, Franklin, Conrad, Everette, Miskalis, Miller, Goyne, Bohenski, and Cronauer violated his Eighth Amendment rights failing to take a more protective approach to establish procedures and practices" to keep him safe. (Doc. No. 1 ¶¶ 55.) Plaintiff avers that their failure to do so caused him to contract COVID-19. (*Id.*) The Court does not dispute that the COVID-19 pandemic constitutes a substantial risk of harm to inmates. *See Wilkins v. Wolf*, No. 1:20-cv-2450, 2021 WL 2376678, at *6 (M.D. Pa. June 10, 2021). However, Plaintiff has failed to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk posed by COVID-19. As noted *supra*, the DOC has adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 through the state correctional institutions. The Court may take judicial notice of this information, as it is publicly available on a governmental website. *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017). "A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Plaintiff." *Bevins v. Kauffman*, No. 1:20-cv-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021).

While the Court understands Plaintiff's legitimate concerns regarding the COVID-19 pandemic, it agrees with the numerous courts throughout the nation that have concluded that similar allegations do not support a plausible inference that officials have demonstrated deliberate indifference to inmates' Eighth Amendment rights. *See, e.g., Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a preliminary injunction on the basis that, *inter alia*, the plaintiffs had not demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional facility had "implemented many measures to curb the spread of the virus"); *Bevins*, 2021 WL 322168, at *5; *Wylie v. Bonner*, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Shokr v. LeBlanc*, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus); *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint failed to set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D.

Mich. June 29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures . . . to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation").  Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." *See Wylie*, 2021 WL 261280, at *6.  From Plaintiff's complaint, as pled, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'" *See Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020).  The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims concerning Defendants' alleged inadequate response to the COVID-19 pandemic.

### b.    Other Conditions of Confinement

Plaintiff also avers that his Eighth Amendment rights were violated by the denial of outdoor exercise.  (Doc. No. 1 ¶ 37.)  He maintains that he was "subjected to 24 hour in cell confinement with no opportunity for out of cell recreation or any other forms of out of cell exercise for over a span of 90 days." (*Id.*)  Plaintiff claims that he complained to Defendants Miller and Belles as well as the "PRC staff members and psychology staff." (*Id.*)  To determine whether a deprivation of outdoor exercise amounts to a sufficiently serious deprivation under the Eighth

Amendment, "courts should consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017). Here, Plaintiff fails to allege facts suggesting that he was unable to exercise within his cell and that he suffered any ill health effects as a result of the deprivation of outdoor exercise. His Eighth Amendment claim regarding the denial of outdoor recreation will, therefore, be dismissed.

Plaintiff also suggests that he was denied cleaning supplies and forced to use showers that were covered with blood, feces, and bodily discharge. (Doc. No. 1 ¶ 33.) He also avers that he was denied laundry services and personal hygiene services, such as haircuts and shaves. (*Id.* ¶ 34.) Finally, Plaintiff avers that he was "subjected to 24 hour [continuous] lighting coupled with at least 12 hours of loud music blaring through the vent and was forced to eat cold under cooked food." (*Id.* ¶ 38.) Plaintiff vaguely suggests that Defendants Snyder, Houston, Sopata, Natale, Kalapat, Kutney, and Jones "abandon[ed] services such as passing out cleaning supplies, line exchange . . . and laundry services." (*Id.* ¶ 56.) While these conditions could rise to the level of Eighth Amendment violations, Plaintiff fails to allege facts suggesting how these Defendants were personally involved in the alleged

deprivations. Plaintiff's Eighth Amendment claims regarding these conditions, therefore, will be dismissed at this time.

### c. Denial of Medical and Mental Health Care

To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs. *See Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *See Farmer*, 511 U.S. at 837. Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from

receiving needed or recommended medical treatment. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Plaintiff avers that Defendants Austin and Ashton denied his multiple requests for mental health services. (Doc. No. 1 ¶¶ 47, 49.) Given these allegations, the Court concludes that Plaintiff has set forth plausible Eighth Amendment claims against Defendants Austin and Ashton at this time. Plaintiff also maintains that Ms. McAndrews and Ms. Harrison ignored his requests for mental health treatment; however, he has not named McAndrews and Harrison as defendants in this matter. Moreover, Plaintiff suggests that Defendant Jeddick denied him access to psychological care but fails to aver how he was personally involved in this denial. *See Robinson*, 2017 WL 2152365, at *1-2. Thus, while Plaintiff can proceed on his Eighth Amendment claims against Defendants Austin and Ashton, his remaining claims concerning the denial of mental health care will be dismissed.

Plaintiff also avers that Defendant Prince violated his Eighth Amendment rights by failing to provide adequate medical treatment for his hemorrhoids, a rash/infection, and his COVID-19 condition. (Doc. No. 1 ¶¶ 39, 42-43.) Given these allegations, the Court concludes that Plaintiff has set forth a plausible Eighth Amendment claim against Defendant Prince at this time. Plaintiff also asserts that Defendants DeBoer, Woolfolk, and Chackan denied him medical treatment. (*Id.* ¶ 60.) Plaintiff, however, fails to include facts suggesting how they were personally

involved in the alleged denials of medical treatment, and his collective use of "medical staff" is insufficient to plead how they were personally involved. *See Lawal*, 546 F. App'x at 113; *Hudson v. City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming the dismissal of one defendant because the complaint did not provide any basis for a claim against him). Furthermore, Plaintiff suggests that a "Dr. Pinky/Bora" denied him medical treatment, but Plaintiff has not named this individual as a defendant in the above-captioned action. Thus, while Plaintiff can proceed on his Eighth Amendment claims against Defendant Prince, his remaining claims concerning the denial of medical care will be dismissed.

### 3. Fourteenth Amendment Claims

#### a. Deprivation of Inmate Account Funds

Plaintiff avers that Defendants Martin, Smith, and Burla violated his Fourteenth Amendment due process rights by "excessively charg[ing] [his] account to the point of total depletion without any verbal or written notice and without the Plaintiff's signed authorization." (Doc. No. 1 ¶ 58.) "Inmates have a property interest in funds held in prison accounts" and, therefore, "are entitled to due process with respect to any deprivation of this money." *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997). As the Third Circuit has noted with respect to medical co-pays, they are not assessed in situations where "inmates are deprived of the benefits of their property and receive nothing in return; rather in exchange for the fees, the

inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed." *Id.* at 180. Plaintiff, however, suggested that excessive medical fees were charged to his account even when he received no medical or mental health action. (Doc. No. 1 ¶ 51.) At this time, therefore, the Court concludes that Plaintiff has set forth a plausible due process claim against Defendants Martin, Smith, and Burla.

Plaintiff also suggests that Defendant Ransom violated his due process rights by "upholding the decision to deduct funds from Plaintiff's account in an inmate [grievance]." (*Id.* ¶ 58.) However, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated

an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate-plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Rode*, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action). Plaintiff's claims against Defendant Ransom, therefore, based solely upon the substance of his respective responses, or lack thereof, to Plaintiff's grievances are subject to dismissal. *See Alexander v. Gennarini*, 144 F. App's 924, 925 (3d Cir. 2005).

### b. Misconduct Proceedings

Plaintiff also suggests that Defendant Hicks violated his Fourteenth Amendment due process rights by submitting a false misconduct report against him, and that Defendant McKeown violated his rights by sanctioning him to 210 days in solitary confinement. (Doc. No. 1 ¶ 57.) Plaintiff also suggests that Defendant

Bower violated his due process rights by sanctioning him with phone, cell cleaning, shower, yard, and movement restrictions after issuing a misconduct charging him with refusing a cellmate.[2]  (*Id.* ¶ 24.)

It is well established, however, that the "filing of a false misconduct report does not violate an inmate's due process rights." *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 702 (M.D. Pa. 2015).  This is so because the sanctions stemming from prison disciplinary hearings "do not usually affect a protected liberty interest," *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011), and due process requires only "the opportunity to be heard and defend against the allegedly false misconduct report." *Tolbert v. Ellenberger*, No. 3:19-cv-410, 2019 WL 3193678, at *2 (M.D. Pa. June 17, 2019) (citing *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002)), *Report and Recommendation adopted*, 2019 WL 3202210 (July 15, 2019).  Therefore, as long as "certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Smith*, 293 F.3d at 654.

---

[2] To the extent Plaintiff suggests that the issuance of the allegedly false misconducts violated his Eighth Amendment rights, "false misconduct chares are not 'sufficiently serious' that they result 'in the denial of the minimal civilized measure of life's necessities.'" *Booth v. Pence*, 354 F. Supp. 2d 553, 558-59 (E.D. Pa. 2005) (quoting *Farmer*, 511 U.S. at 832).  This is so because "false misconduct charges themselves do not constitute the denial of 'basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety.'" *Id.* (quoting *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997)).

Here, Plaintiff suggests that he received 210 days in solitary confinement, and was subjected to phone, cell, shower, yard, and movement restrictions. (Doc. No. 1 ¶¶ 24, 57.) Neither disciplinary measure, however, is enough to establish that Plaintiff was deprived of a liberty interest. *See, e.g.*, *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (noting that confinement in administrative custody for 178 days did not rise to the level of a protected liberty interest); *Rosario v. Lynch*, No. 2:13-cv-1945, 2017 WL 4098709, at *12 (E.D. Pa. Sept. 15, 2017) (noting that detention in solitary confinement for fifteen (15) months does not trigger due process protections). Moreover, the other restrictions, such as using the phone, yard, and shower, do not constitute protected liberty interests. *See Goenaga v. MacDonald*, No. 3:14-cv-2496, 2017 WL 1197882, at *6 (M.D. Pa. Feb. 15, 2017), *Report and Recommendation adopted*, 2017 WL 1178072 (M.D. Pa. Mar. 30, 2017). Moreover, Plaintiff does not suggest that he was deprived of the opportunity to contest the misconducts, as he asserts that Defendants Miller and Ransom, as well as Zachary Moslak, upheld the decision. (Doc. No. 1 ¶ 57.) Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding the misconducts and resulting sanctions will be dismissed.

### B.    Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely

deficient.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The federal rules allow for liberal amendments in light of the "principle that the

purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*,

371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may

deny a motion to amend where there is "undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [or] futility of the amendment." *Id.*  The Court must also determine

that a proposed amendment would be futile if the complaint, as amended, would not

survive a motion to dismiss for failure to state a claim.  *In re NAHC, Inc. Sec. Litig.*,

306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court concludes that it would be futile to grant

Plaintiff leave to amend his Eighth Amendment claims regarding the response to the

COVID-19 pandemic as well as his Fourteenth Amendment due process claims

relating to the misconducts and resulting sanctions.  Those claims, therefore, will be

dismissed with prejudice.  However, it is neither clear that amendment would be

futile, nor is there any basis to believe that amendment would be inequitable, with

respect to Plaintiff's remaining claims that have been dismissed.  Accordingly,

Plaintiff will be granted leave to file an amended complaint with respect to such

claims.  Plaintiff is advised that the amended complaint must be complete in all

respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document.  The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of each defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a plausible claim.  Plaintiff is advised that if he fails to file an amended complaint, the above-captioned case will proceed only as to his First Amendment retaliation claims against Martin and Smith; his Eighth Amendment denial of medical and mental health care claims against Defendants Prince, Austin, and Ashton; and his Fourteenth Amendment due process claims against Defendants Martin, Smith, and Burla.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. No. 7) and partially dismiss his complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff's motion to appoint counsel (Doc. No. 2) will be denied without prejudice.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (noting that, when considering a motion to appoint counsel in a civil action, "the district court must consider as a threshold the merits of the plaintiff's claim").

Plaintiff's motion for an extension of time (Doc. No. 9) to submit the filing fee or a motion for leave to proceed *in forma pauperis* will be denied as moot. The Court will afford Plaintiff thirty (30) days from the date of the Order accompanying this Memorandum in which to file an amended complaint, consistent with the Court's discussion herein. An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated: July 1, 2021